IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANTHONY RAY SIELOFF,<br><br>       Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,[1]<br>Acting Commissioner of Social Security,<br><br>       Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 2:09-cv-01088-DN-DBP<br><br>District Judge David Nuffer<br><br>Magistrate Judge Dustin B. Pead |

## I.  INTRODUCTION

This social security appeal was referred to the Court under 28 U.S.C. § 636(b)(1)(B). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33.  For the reasons that follow, the undersigned **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

## II.  PROCEDURAL HISTORY

In October 2006, Plaintiff applied for DIB and SSI, alleging a disability onset date of April 30, 2006.  (Tr. at 10.)  His claims were denied initially, and he requested and received a hearing before an Administrative Law Judge ("ALJ").  (Id. at 11, 32-77.)  After the hearing, the ALJ

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this suit.

issued a decision finding Plaintiff was not disabled within the meaning of the Act from April 30, 2006 through the date of the decision, May 23, 2008.  (Tr. at 10-31.)  After the Appeals Council denied Plaintiff's request for review (Id. at 1-5), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.  See 20 C.F.R. §§ 404.981, 416.1481.

## III.  STATEMENT OF RELEVANT LAW

### A.  The Commissioner's Determination-of-Disability Process

The Act states that an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The disabling impairment must last, or be expected to last, for at least twelve consecutive months.  See Barnhart v. Walton, 535 U.S. 212, 214-15 (2002).

To determine whether a claimant is disabled, Social Security regulations set forth a five-step sequential evaluation process.  That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met or medically equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy.  See 20 C.F.R. § 404.1520(a)(4).  If a decision regarding the claimant's disability can be reached at any step in the sequential evaluation process, further evaluation is unnecessary.  See id. § 404.1520(a)(4).

### B.  Standard of Review

A district court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings, and whether the correct legal

standards were applied.  See Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Id. (internal quotation and citation omitted).  The Court may neither reweigh the

evidence nor substitute its judgment for that of the ALJ.  Id.  Where the evidence as a whole can

support either the agency's decision, or an award of benefits, the agency's decision must be

affirmed.  See Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990).

## IV.  DISCUSSION

### A.  Any Error at Step two was Harmless

At step two, an impairment that "does not significantly limit your physical or mental ability

to do basic work activities" is non-severe.  20 C.F.R. § 404.1521(a).  Plaintiff contends the ALJ

erred at step two when he declined to find Plaintiff's fibromyalgia and obesity constituted severe

impairments.

However, any alleged error was harmless where the ALJ proceeded to consider all of

Plaintiff's impairments, both severe and non-severe, at the next steps of the analysis.  (Tr. at 14-

31.)  See 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(2), 404.1520(a)(4); Carpenter v. Astrue, 537

F.3d 1264, 1266 (10th Cir. 2008) (finding that any error at step two was harmless when the ALJ

properly concluded that a claimant could not be denied benefits conclusively at that step, and

proceeded to the next step of the sequential evaluation process).

Alternatively, substantial evidence supports the ALJ's decision that Plaintiff's fibromyalgia

was not a severe impairment.  He extensively discussed how a fibromyalgia diagnosis requires a

finding of pain in at least eleven trigger points in the body, he noted Plaintiff's medical record

included "no such findings," and he referenced the lack of an official diagnosis in the record.

(Tr. at 14.)  Moreover, the ALJ's fibromyalgia finding had little practical effect on the ALJ's

ultimate decision.  He adequately accounted for any limitations from Plaintiff's fibromyalgia

when he analyzed Plaintiff's chronic pain and fatigue as severe impairments.  (Tr. at 13-14.)

Substantial evidence also supports the ALJ's decision that Plaintiff's obesity was not a severe

impairment.  In the proceedings below (in which Plaintiff was represented), Plaintiff never

asserted he was obese.  Indeed, he points to no medical evidence in which his alleged obesity is

mentioned or cited as a cause for functional limitations.  See Briggs v. Astrue, No. 06-5141,

2007 WL 1041418, at *2 (10th Cir. Apr. 9, 2007) (unpublished) (finding ALJ did not err by

failing to consider a claimant's obesity where the claimant did not address his obesity in his

benefits application or at the ALJ hearing).

### B.  Substantial Evidence Supports the ALJ's Finding That Plaintiff's Impairments did not Meet Listing 11.14

Plaintiff challenges the ALJ's step three finding.  Plaintiff argues the ALJ provided only a

"cursory discussion of the evidence he used" to decide Plaintiff's impairments did not meet

Listing 11.14, concerning peripheral neuropathies.[2]  (Dkt. No. 18 at 7.)

At step three, the Plaintiff bears the burden to show that any medically severe impairment,

alone or in combination with other impairments, meets or is equivalent to any of a number of

listed impairments that are so severe as to presumptively preclude substantial gainful activity.

See 20 C.F.R. §§ 404.1525-404.1526, pt. 404, subpt. P, app. 1, 416.925-416.926; Fischer-Ross v.

Barnhart, 431 F.3d 729, 731, 733 (10th Cir. 2005).  More specifically, "[t]o show that an

impairment or combination of impairments meets the requirements of a listing, a claimant must

---

[2] To satisfy Listing 11.14, a claimant must establish peripheral neuropathies with disorganization
of motor function characterized by significant and persistent disorganization of motor function in
two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and
station.  20 C.F.R. pt. 404, supt. P, app. 1, §§ 11.04B, 11.14.

provide specific medical findings that support each of the various requisite criteria for the impairment." Lax, 489 F.3d at 1085.

Here, the ALJ thoroughly discussed the evidence for Listing 11.14 in the context of his residual functional capacity ("RFC") determination that Plaintiff could perform light work with several restrictions. (Tr. at 15-28.) See Fischer-Ross, 431 F.3d at 733 ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."). Additionally, the medical expert testified that Plaintiff's impairments did not meet or equal Listing 11.14. (Tr. at 55.) Because, as discussed below, this Court believes the ALJ's RFC assessment was supported by substantial evidence, the Court likewise concludes that the ALJ's step three finding is supported by substantial evidence. See Fischer-Ross, 431 F.3d at 733.

**C. The ALJ's RFC Assessment is Supported by Substantial Evidence**

Next, Plaintiff makes several arguments that the ALJ's RFC assessment was not supported by substantial evidence. The Court will address each in turn. It is the Commissioner's responsibility to assess a claimant's RFC; in other words, it is a question reserved by law to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c), 416.927(e), 416.946(c); Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). An ALJ assesses a claimant's RFC based on all the evidence in the record. 20 C.F.R. § 404.1545(a)(1). An ALJ's RFC finding does not have to directly correspond to a specific medical source opinion. See Chapo v. Astrue, 682 F.3d 1285, 1288-89 (10th Cir. 2012).

Here, Plaintiff argues that the ALJ's RFC assessment was lacking because the ALJ should have adopted certain views expressed by Dr. Malouf, Dr. Brooks, and Dr. Ricciardi. (Dkt. No. 18 at 9-13.) The Court finds Plaintiff's argument unavailing.

The ALJ determined that Plaintiff's treating sources included Drs. Malouf, Ricciardi, and Brooks. (Tr. at 25.) Further, the ALJ gave controlling weight to the findings and opinions of these doctors that were "contained in the treatment notes." (Tr. at 25.) The ALJ gave little weight, however, to certain "checklist forms" completed by Dr. Brooks and Dr. Ricciardi because they were "not well-supported, and [] inconsistent with their own treatment notes and with the remainder of the medical evidence." (Id. at 25.) This was reasonable.

Dr. Brooks' checklists are internally inconsistent. A 2007 checklist Brooks completed indicated Plaintiff could grasp but could *not* push/pull with his arms. (Id. at 352.) A 2008 checklist Dr. Brooks completed conversely indicated Plaintiff could *not* grasp but could push/pull with limitations. (Id. at 418.) Moreover, around the same time Dr. Brooks completed the checklists, Dr. Brooks' treatment notes show that Plaintiff's musculoskeletal examination was mostly normal. (Id. at 23-24, 350-51.) Dr. Brooks also questioned Plaintiff's subjective reports because he believed "there is no medical reason [Plaintiff] cannot walk." (Id. at 362.)

Additionally, the ALJ detailed other medical evidence that rebutted the extreme limitations in Dr. Brooks' checklists, including physical examinations that revealed Plaintiff had a normal gait and station, normal sensation, and normal test results. (Tr. at 246-47, 237-39, 362-63.) See, e.g., Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) (noting the fact that a doctor's treatment notes do not support his later opinion is a good reason to reject the doctor's opinion); Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (indicating a treating physician's opinion may be rejected if the opinion is not supported by specific findings, or if the opinion is brief, conclusory, and unsupported by medical evidence).

Regarding Dr. Malouf, Plaintiff contends the ALJ failed to explain why he allegedly rejected the doctor's statement that Plaintiff's "[c]urrent psychiatric and medical symptoms interfere with

[his] ability to engage in employment, attend school and cope with daily stressors." (Tr. at 414.) First of all, in his treatment notes, Dr. Malouf simply described Plaintiff's subjective complaints as relayed during his first visit with the doctor. (Tr. at 413.) This statement is not a medical opinion derived from sustained treatment. Second, and more fundamentally, the ALJ did not reject the notion expressed in the doctor's statement. On the contrary, the ALJ's determination is consistent with Dr. Malouf's broad statement. In the RFC assessment, the ALJ found Plaintiff possessed several mental limitations on his capacity to work. (Id. at 15.) In other words, the ALJ recognized that Plaintiff's psychiatric symptoms "interfered" with his ability to work, but the ALJ also found this interference was not so great as to preclude all work—a point not addressed by Dr. Malouf in the statement quoted by Plaintiff.

Regarding Dr. Ricciardi's checklist (Id. at 383-85), Plaintiff asserts that the ALJ erred by not adopting it where it was supported by Dr. Malouf's aforementioned statement about Plaintiff's psychiatric limitations. (Dkt. No. 18 at 12.) However, substantial evidence supports the ALJ's decision to not give great weight to Dr. Ricciardi's checklist. Dr. Malouf's statement did not identify the many specific and extreme limitations indicated by Dr. Ricciardi. Further, the ALJ appropriately observed that Dr. Ricciardi's checklist was substantially based on Plaintiff's subjective assertions that the ALJ found less than credible. (Tr. at 24-25.)

The Court will also briefly address two arguments that Plaintiff raised for the first time at oral argument. See Thomas v. Denny's, Inc., 111 F.3d 1506, 1510 n.5 (10th Cir. 1997) (noting that an argument raised for the first time at oral argument "comes too late.").

At oral argument, Plaintiff asserted that the ALJ's RFC assessment was not supported by substantial evidence because it was not based on any doctor's opinion. However, as the Tenth Circuit noted in Chapo, an ALJ's RFC finding does not have to directly correspond to a specific

medical source opinion.  See 682 F.3d at 1288-89.  Here, the ALJ provided "convincing and reasonable explanations for his RFC findings."  See Sowers v. Astrue, No. 11-1306-SAC, 2013 WL 172866, at *3 (D. Kan. Jan. 16, 2013) (discussing Chapo).  The ALJ exhaustively discussed the medical, and other evidence, for more than ten pages, and discussed how Plaintiff's mental and physical impairments impacted his ability to perform work activities.  (Tr. at 15-28).  This was adequate.

At oral argument, Plaintiff also asserted, for the first time, that the ALJ's RFC was lacking because it included "mild" and "moderate" mental limitations, but the ALJ failed to define what he meant by "mild" or "moderate."  This Court is not aware of any case law that requires the ALJ to define what "mild" or "moderate" mental limitations amount to.  Moreover, the Commissioner's regulations use these terms.  See 20 C.F.R. §§ 404.1520a, 416.920a.  See also id. pt. 404, subpt. P, app. 1, § 12.00.  Additionally, in this case, the ALJ posed a hypothetical question to the vocational expert, who did not find these terms to be vague or inadequately defined to render an opinion.  Accordingly, the Court finds no reversible error.

### D.  The ALJ's Error in Failing to ask the Vocational Expert About Potential Conflicts With the *Dictionary of Occupational Titles* was Harmless

Finally, Plaintiff contends the ALJ committed reversible error because he did not expressly ask the vocational expert about any potential conflicts between her testimony and the *Dictionary of Occupational Titles* ("DOT").  Because Plaintiff does not demonstrate, or even allege, that any such conflicts actually exist, any error was harmless.  See Poppa v. Astrue, 569 F.3d 1167, 1173 (10th Cir. 2009) ("Although we agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts.").

**V.  RECOMMENDATIONS**

The court's function is not to substitute its own judgment for that of the ALJ, but to

determine whether the ALJ's decision is supported as a matter of fact and law.  Based on the

analysis above, the Court finds that the Commissioner's decision to deny Plaintiff DIB and SSI

benefits is supported by substantial evidence, and free from harmful legal error.  Therefore, the

undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

Copies of the foregoing report and recommendation are being sent to all parties who are

hereby notified of their right to object.  Any objection must be filed on or before **March 20,**

**2013**.  Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 6th day of March, 2013.

Dustin B. Pead
United States Magistrate Judge